Morning, Your Honors. John DeHaan from Appellant, Jason Richards. May it please the Court, I Social Security review case reviewing the denial of SSI benefits to my client, Jason Richards. Mr. Richards has a psychiatric, a number of psychiatric impairments. This is a pure psychiatric claim. And his onset date is prior to the case that I'm surprised he was denied by the ALJ. I'm surprised he was denied by the district court. I'm surprised that we had to come this far in this process. My client has several prior to the denial by the ALJ, he had several years of treatment, first with a social worker and a nurse practitioner specializing in psychiatry. Then he transitioned directly from that to another social worker who worked with a board certified psychiatrist. So he has a continuous spectrum of care here. There is no question as to whether or not he has the impairments that he's alleging. So the fact that the nurse practitioner is not an acceptable medical source is not really an issue here. She specializes in psychiatry, so she's well qualified to assess his limitations and restrictions and his medical condition. And his medical conditions are established. And they're supported by a board certified psychiatrist. So the question then becomes is whether or not the medical record here is sufficient to support a finding of disability. And I respectfully submit that it is. The ALJ gave lip service basically to the factors in 416.927, but really did not substantively or adequately address that. There was a conflict. The issue of supportability was addressed, not well, but it was addressed by the ALJ. Consistency, though, between the medical records was never addressed. And that is a crucial factor here because the only way you find Dr. Arango's opinion was not entitled to substantial or controlling weight is if you can say it was not supported and consistent with other substantial medical evidence to really contradict the treating board certified psychiatrist. Social Security did have a non-examining state agency doctor look at the records, but at the time there were only two medical exhibits in the file. So most of the record was not reviewed by that doctor. So an incomplete medical review cannot constitute substantial medical evidence to support an ALJ's finding here. Likewise, the consultative examiner, he reviewed, it's not explicit in this decision, but there's no indication in the consultative examiner's report that he reviewed any medical documentation. And they rarely, if ever, do review documents. Well, the ALJ, though, was not relying on the consultative physician's views as much as expressing concern that the treating physician's conclusion of marked mental limitations was at odds with some of the status evaluations from July to December of 2018. There, there are notes indicating that his attention was good, his memory was intact, he had good insight and judgment, his thought contact was appropriate. Am I overlooking something here? No, I mean, that's all part of this. The ALJ essentially discarded all of the medical opinions, both the Social Security Administration's as well as the treating providers. So there really is no medical opinion to support that. Right, but you said there was nothing to contradict the treating physician, and I thought the administrative law judge thought that the problem was that his own more detailed findings don't support his conclusion. So doesn't that create a problem that your client would not have carried the burden? Well, the problem is with the characterization of the more detailed findings. The more detailed findings are actually contained in Dr. Arengo's report, where he indicated what his positive clinical findings and observations were. There's a great overlap in that report with the nurse practitioners as well. They both identified not identical, but mostly the same clinical findings and symptoms and observations to support their assessments. I thought that the ALJ decided to give little weight to Dr. Arengo's opinion because of inconsistency with the medical record as a whole, but maybe specifically the treatment notes. So can you explain what was wrong with that? Well, what's wrong with that is that kind of critique of a treating doctor's treatment notes isn't evidence, and it's rarely enough to overcome a treating doctor, especially when that doctor's opinion is consistent with other providers. Can you just point me to where the ALJ really critiqued? I know the district court did a lot of thoughtful analysis of the doctor's treatment notes, and the government in the brief did, but can you point me to where the ALJ- It's extremely brief, so it's easy to miss. I mean, I see the sentence, this opinion is afforded little weight as it is inconsistent with objective mental status examination findings, plus he didn't have inpatient treatment. That's it. Is there any place in the ALJ's decision where the ALJ points us to the objective mental status examination findings with which the ALJ thinks this conclusion is inconsistent? With that particular doctor, I do not believe he goes into that kind of detail. Well, that's the treating doctor, right? Dr. Arango is the treating doctor, yes. And I might add also, though, going back to whether or not a review of the treatment records would be sufficient in a case like this, the courts have repeatedly found that that kind of critique generally isn't enough. But it's even worse so in a case like this, which is a psychiatric claim. So we're talking about treatment records that are going to be notes of what the doctor sees and jots down about somebody. It's not the kind of a case where if you had a back injury, there could be an MRI report in those records. I may not be understanding what you're saying when you say a critique. To the extent that the treatment findings are not as serious as the conclusion, why is that something the law does not permit the ALJ to rely on in finding that the plaintiff had not met the burden? I thought it was. I thought that was exactly what the ALJ could rely on. So I want to be sure I understand your argument. Well, the treatment records in this are not records that are created for purposes of documenting a disability. They are there for the doctor. They're there for treatment. Yes, but for the doctor's own use. They might make them particularly reliable. Well, in a case that is not in my brief, but it's actually an ERISA case in the Southern District relying upon a Social Security case from the Ninth Circuit. They quoted the Ninth Circuit and said the primary function of medical records is to promote communication and record keeping for the health care personnel, not to provide evidence for disability determinations. The Southern District case is Aitken v. Aetna, 2018, Westlaw 4608217, and that's at page 20 from September 25th, 2018. They're quoting Ninth Circuit case Oren v. Astru, 495 Fed Third 625-634. But that really gets to the heart of the matter here. Those records were not meant to document every single thing that the doctor observed. They were meant to provide what he deemed sufficient for his own record keeping. And I might add, Dr. Orengo also works with Dr. Garces, who is not a medical doctor or a psychologist. He's a therapist, a social worker, but he has a doctorate in the same practice. And it's apparent when you review what Dr. Orengo is saying, he is looking at more than just the sparse notes that were produced from him directly. He had access to Dr. Garces, who saw my client much more often than he did, because Dr. Orengo is typical of a psychiatrist he does not see as frequently as the therapist. So the records that were submitted are not everything that was available and known to Dr. Orengo. And to just basically go through some sparse notes from the doctor and assume that that encapsulates everything, the ALJ, who's not a medical professional, looking at mental status exams and interpreting the significance and saying, you know what, this board-certified psychiatrist doesn't know what he's talking about because I think this finding on this date in the mental status exam totally disproves it. That's not appropriate. He doesn't have the training to understand that. Worst case scenario, the ALJ could have said, he could have contacted Dr. Orengo or he could have instructed counsel to contact Dr. Orengo and further develop the record on this. But to just throw out the opinion of a board-certified psychiatrist, whose opinion is remarkably consistent with a nurse practitioner who's certified to specialize in psychiatry, is just insupportable in this case. And if you compare those two opinions, they are both identifying clinical findings in that. Those findings do not line up with the treatment records in this file. That I can see. But that begs the question, are these providers making stuff up? Are they pulling things out of the sky to put in here? Or do they have additional records, additional knowledge from sitting and talking with this client for 45 minutes or an hour at a time over many sessions that are not fully documented? Which is not an uncommon occurrence. May I ask you about the nurse practitioner? Do I understand her correctly at page 274 of the record to have indicated that Richard has never been able to maintain employment due to his mental symptoms and cannot function outside of his home? I was perplexed by that because, of course, he had worked for 10 years with his brother. So there was definitely that limitation on him. But it's not that he's never been able to maintain employment due to his mental symptoms or that he cannot function outside the home. He was able to do both, but with the confidence that he was given by being with his brother. Well, he was working. Yes, he did work for a time. The nurse practitioner's statement is not quite accurate. That is not quite accurate. Yeah, okay. But it's also true that my client had not worked for many years prior to that. Right, but if you read that statement by itself without knowing about it, it would give you the impression of a man who had never worked outside his home when that was far from true. He'd done it for 10 years. He'd done it for 10 years, but in almost a sheltered type of- I'm just asking you because you emphasized the nurse practitioner, and I'm suggesting there are some issues with her report, too. Yes, but, again, this would be something to inquire further of the nurse practitioner. There's no doubt that he did work for a time, but, again, it was more of a sheltered type of employment. This is somebody who did not finish high school. I understand. And not only that, he failed the GED exam. I think you reserve some rebuttal time. Oh, I didn't realize I'd gone over. Thank you. Your Honors, may it please the Court, Fergus Kaiser for the appellee commissioner. So I think I'd first just like to start just responding to what was discussed earlier. I'm not familiar with the case that my colleague brought up, but judging from the name of the case, Aetna being the defendant, I would assume that is under different standards than what we're dealing with here in establishing what a disability is. And while my colleague may take issue with the fact that the ALJ will look to treatment records to determine whether or not an opinion actually has substantial support in the record, the fact of the matter is that's what ALJs are charged with to do with under the regulations. Can I ask about that? So one of the issues in this case that we were sort of in our chambers talking, how much does the ALJ have to show their work, right? Yeah. And so under the treating physician rule, back from the old times, that we're still applying here, there's two steps. There's give the treating physician controlling weight if you conclude that it's consistent with other substantial evidence. And then there's the second step. If they say no, it's not entitled controlling weight, you have to go through all these factors to explain why you would give it limited weight. Correct. To my read, and I want to put aside any backfill from the district court and evaluate, because we're right, our review of this is not subject to any sort of deference to the district court's analysis. And so looking at the ALJ's opinion, the ALJ says this opinion, talking about the treating physician, is afforded little weight as it is inconsistent with objective mental status examination findings. Does the ALJ ever tell us where the objective mental status examination findings are with which it thinks the conclusion is inconsistent? In that specific paragraph, I believe there is not an actual site to a record. But the fact of the matter is mental status evaluations are a term of art in mental health care. They're actually described as sort of like the physical you get mentally. Is there any place else in the recitation of the facts or another place where the ALJ says this finding is inconsistent with Dr. Arango's conclusion? It doesn't have to be in that same paragraph. Is there anywhere in the whole opinion where the ALJ tells us what they're talking about when they say this is inconsistent with objective mental status examination findings? Well, in the paragraph above that, I believe the ALJ goes into detail discussing the N.P. Mitchell's reports. And they actually take up a pretty large bulk of the evidence. I think they span like 44 pages. And they actually cover a significant chunk of the relative period. And it's Mitchell's notes that also pretty much documents relatively normal functioning throughout the relevant period. And does the ALJ say that? Well, yeah, the ALJ says in N.P. Mitchell's notes, specifically citing N.P. Mitchell's notes, condition improved with medication, there is no evidence of psychotic features, able to attend the group sessions at pros three days a week. Social and function was improved. He would socialize with others, even outside the structured environment of that session. And then when you look to the actual mental status evaluations, the MSEs he cites when discussing Arango, they basically echo pretty much everything that N.P. Mitchell was also discussing. And we do have loss. And you don't need, the ALJ doesn't need to actually get into every single piece of information. No, but it has to tell. So Dr. Arango says, I mean, nobody disputes that this gentleman has a diagnosis, has a condition. That's a real thing. Nobody's saying he's a malingerer. Dr. Arango says, I think it's likely that he will be absent at least three days a month. That becomes a critical finding that drives the whole RFC and the whole outcome of this case. I'm trying to figure out what evidence in the record is inconsistent with that conclusion or supports the rejection of Dr. Arango's opinion, and the fact that the nurse documents improvement in some cases relative to prior visits or that he's able to leave the home to attend treatment programs, how that undermines the notion that he wouldn't be able to sustain a work schedule that's required for the RFC that was assigned to him. Well, I think it's important to note, and please let me know if this doesn't get to your question, that contrary to what my colleague said, the ALJ actually didn't discard any of these opinions. The ALJ properly focused in on what everybody, what the record showed and what pretty much, except for the CE and the state agencies, the ALJ actually found that those didn't find enough limitations, that his real issue here is social interaction. And everybody pretty much, Arango and MP Mitchell said, you know, he can't deal with unknowns and the public, and the ALJ incorporated that into the RFC. However, when it comes to more familiar environments and with people he knows, yes, he still has some limitations. Here he was only occasional interaction with supervisors and with coworkers. But it still gave little weight to Dr. Arango's opinion. And I guess I'm echoing my colleague in saying the treating physician rule does apply here. He doesn't talk about the three of the Burgess factors. It's hard to know from the very brief discussion of the treatment notes just exactly what's the basis for rejecting the treating physician. So help me out. What am I missing in the ALJ's analysis? Well, the one, I talked about MP Mitchell's records here, which largely are pretty benign. And then he mentions the mental status evaluations. And if we look at the mental status evaluations, and they're from community counseling. I believe this exhibits 8F and 9F. That's where Dr. Arango works. And these specific mental status evaluations are consistently benign. Good judgment, intact memory, good concentration and attention, basically echoing the benign findings that were also found in Mitchell's reports. And not only that, but these are, Arango's opinion was November 2018. And all these mental status evaluations are contemporaneous to that time period. They're running from June 2018 to December 2018. And even in specific regard to the social functioning ability, in familiar environs, it is consistently noted in the MSCs that he has appropriate behavior during all of these sessions. So when you really juxtapose what the opinion says with what the actual treatment on the ground said, it's a pretty stark contrast. But like I said before, he didn't completely discard any of these opinions. Pretty much everyone agrees that this guy has some pretty significant issues dealing with the public and being in unfamiliar environments. But it shows that once he is familiar, like working with his brother, or even in the PROSE program he attended, within weeks he was saying, you know, I'm surprised how much more social I am, and not just in the structured setting. He specifically talked about meeting common areas with people and socialize with them. So I think it's important to remember that the ALJ wasn't just tossing these opinions wholly without regard for what they said. If you look at what the records on the ground say, they support the RFC. But they don't support the extreme limitations of kind in these opinions. And I'm still, can you point me to where, I understand your analysis that there's plenty in the record- Correct. From which the ALJ could have concluded that the degree, I mean that they credit Dr. Ringo to some extent, but that the degree to which Dr. Ringo described the limitations isn't fully consistent with the records. I'm looking for some sort of place where the ALJ tells us. Well, the ALJ specifically says the results of the mental status evaluations do not support this opinion. Right. No, that's the conclusion. So is that, that's the conclusion, and I guess the question is, does the ALJ need to do more? Well, it would be, I don't, could the ALJ have been more specific? Sure, anybody could always have more detail in their opinions. But the case law does say you don't need to cover every single little piece of information in the record. And when you look at Mitchell, and then when you look at these MSEs, they pretty much echo each other. I think the question, though, is our review is substantial evidence. Correct. Substantial evidence support the ALJ's decision. Is it appropriate for us to look and see these inconsistencies and say, okay, there's a factual basis for the inconsistency? Or on the treating physician rule, does the ALJ have to point to them specifically? The ALJ did specifically point to them in saying these mental status evaluations do not support this opinion. All right, but what he didn't do was say, on July 8th, July whatever, 2018, the treating physician found X. Correct. And so that doesn't comport with the conclusion that it was this degree of injury. That he doesn't do. Correct. You're saying that just saying that they don't comport and our seeing that they don't comport in part is enough. Yeah, well, it would be one thing if he neglected any decent discussion of all the evidence. And granted, there isn't actually a lot of treatment records here. If you take out all the opinions and everything that predates the relevant period, we're only looking at about 100 pages of treatment records here. When he does get into N.P. Mitchell's, he talks about his progress in the PROS program. Could he have gone into specific details on the MSEs? Yes, but like I stated before, they basically are echoing the exact same thing. He could have said N.P. Mitchell found no significant issues with attention and behavior somewhat normal. And you know what? They're also in the MSEs. If there was a really stark contrast or if there was no substantial discussion of any of the evidence, we would have a problem. But here, he didn't specifically get into granular details of one part, but he did acknowledge it. And also, if he had acknowledged it incorrectly, we would also have a problem. But he correctly said that there's not really a whole lot here in these MSEs. There's no further questions? Thank you. Thank you, Your Honors. Let me just briefly address an issue that you raised. The ALJ does not go on for pages discussing the medical records here. He discusses medical records at precisely two points in this decision. The first is in evaluating whether or not Mr. Richards meets a listing. And I might note, he only discusses the consultative examiner's report in that. He does not mention any other records and doesn't mention any of the treatment records. Then on page 16 of the administrative record, he summarizes the medical records in one paragraph. Yes, he starts the RFC assessment on page 14. But page 15, half of that is taken up with formulaic language discussing the standard he has to apply. And then he summarizes my client's early claim forms that happened early on in the claim. In fact, before he was sexually assaulted in April of 2018, some of those. So let me ask you, on substantial evidence review, which is deferential, as long as upon review of the treatment records there are findings that are inconsistent with the ultimate conclusion, aren't we compelled to uphold the ALJ's conclusion? Well, only if it's exceedingly obvious, and it's not obvious here. Why do you say that the standard is exceedingly obvious? Well, because if you look at the ALJ's decision here, he actually only discusses one examination with mental status exam results, and that's the consultative examiner's, who he also found was entitled to little weight. No, no, he says that the findings are, when he discusses Dr. Arango, he says Dr. Arango's conclusion is at odds with the findings. Now, it's at odds with Dr. Arango's findings, as reported. You argued earlier that he didn't tell us all his findings. But the findings we have don't support the conclusion he urges. Not all of the mental status exam findings are normal. No, no, but even the ALJ acknowledges that. But it's not unusual to have fluctuation in a person's condition when they have a severe psychiatric condition. It's not unusual for somebody with a severe psychiatric condition, including panic disorder and agoraphobia-type disorders, to be doing better in the safe space of a treating doctor's office who they trust. Having mental status exams that, in that clinical setting where he's comfortable with that treatment provider and trusts that treatment provider, is not really going to tell the whole story. What's more important is how the doctor takes that, as well as all of his other dealings with his patient, and then evaluates it. It's the treating physician's perspective and depth of knowledge of his client, of his patient, that he earns and acquires over time. If you look at the treatment notes, in about 70% of the treatment notes we have, in about 70% of them, Richards is reporting a mood of well-being, appropriate. But you're saying in the 30% that he's not, we need more than just looking at the treatment notes in order to say that the substance of the treating physician's role was not violated. Especially when you look at the way these notes are, especially when you consider the fact that Dr. Arango worked in the same office with Dr. Garces, so he had access not only to Dr. Garces' records, but Dr. Garces as a resource. And they, in fact, co-signed a report to New York State assessing my client's disability. Can I, I'm wondering whether, I feel like throughout this argument, we've merged together what you've briefed as two distinct arguments. One is that the ALJ failed to follow the dictates of the treating physician, which is essentially a procedural argument. And then the second is the assessment's not supported by substantial evidence, which is sort of the substantive argument. If you win on the first one, do we even reach the second one? No, we don't. I handle this case solely for litigation. The treating physician rule is a rebuttable presumption. So for me to just come in and argue he didn't follow the dictates of the rule, which he didn't, he did not. But I've never really had a judge just accept that as an argument, and I've never been willing to just argue that without getting into, well, what would happen. No, I'm not critiquing your argument. I just want to make sure I understand the relationship between the argument you're making. That is my argument. The treating physician rule was not followed. But because the treating physician rule is a rebuttable presumption, not an absolute presumption, there is a possibility for an ALJ to find that less than controlling weight should be given to a treating doctor. But if he does so, he has to then follow certain steps, which he did not really do here. He addressed the affordability. But our case law says what we do is if the treating physician rule is violated, we can still deem that error to be harmless if there's a searching review of the record suggests that even though he didn't say everything he was supposed to say, the record supports that the treating physician rule, the appropriate weight was given to the treating physician. Yes, but counter to that, there is extensive case law that neither counsel for defendant nor the court should, you know, provide an ex post facto justification for what the ALJ was obligated to do but didn't. Here, his entire assessment of Dr. Arango is a paragraph that is five lines and one word on the next line. His entire evaluation of Dr. Arango is one sentence. He does not say which mental status exams were inconsistent. In fact, the only mental status exams he actually specifically discusses are in the prior paragraph from a consultative examiner who he found was entitled to little weight. And who he did not even acknowledge inconsistency in that, not inconsistency, contradictions in that doctor's own report. A few moments ago you stressed Dr. Arango's relationship with Dr. Garces. Yes. So I want to ask you about some points in Dr. Garces' evidence that caused some questions to arise for me. Dr. Garces, at page 267 of the record, I think says the plaintiff could not participate in rehabilitation treatment program. Did I understand that correctly? I believe he checked the box that had a fact. Well, that's contradicted by the plaintiff's own participation in successful participation in classes in group therapy. That's the PSOS program, right? The PROS program is a very broad program. Well, but the doctor has said he cannot participate in a rehabilitation treatment program. And that's not so. There's another concern I have. He says that the plaintiff is very limited, those are the words he says, in understanding and remembering simple instructions. But then he says he's moderately limited in understanding and remembering complex instructions. I found it curious that he would only be moderately limited in complex instructions but very limited in simple instructions. How would one reconcile those two conclusions? Well, the ALJ should have asked him. He should have fulfilled his duty to fully develop the record. I could guess as to why that happened. This is not a treating physician now. So the weight does not have to be accorded here. But it does suggest that these conclusions are not very helpful. Dr. Garces and Dr. Arango both signed that opinion. Because they seem to be internally inconsistent or actually at odds with other evidence. Dr. Garces and Dr. Arango both signed that opinion. So it could potentially be subject to- Well, if you look at his more detailed report later on, I think he answers the question there. My guess is, and it's only a guess because nobody asked Dr. Arango or Dr. Garces about that discrepancy, is he probably transposed his responses between those two. He meant to say very limited for complex and moderately limited for simple. Because they're right next to each other, the next line. And these doctors, he probably meant to have the opposite answers for those. But that's a guess. I think it's a reasonable guess, especially when you then look at Dr. Arango's later more detailed opinion. But again, this would have been a perfect example of why the ALJ should have contacted the doctors. Also related to that, the ALJ gave no consideration to this document because he said he can't read who signed it. I had no trouble making out Dr. Garces' signature. And you could tell that it's the same signature on the papers signed by Dr. Arango. To me, it appears more like the ALJ was not really looking too hard or didn't want to look too hard at that. But this is not something the ALJ gave any consideration to. He dismissed it because he said, oh, we don't even know who signed it. Which the district court acknowledged that that didn't seem very believable. Any other questions? Thank you. Thank you both, and we will take the matter under advisement.